IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ALISHA DELORES FRANKLIN,      :
                              :
     Plaintiff,           :
                              :
vs.                        :        CIVIL ACTION 13-0362-KD-M
                              :
CAROLYN W. COLVIN,        :
Commission of Social Security,  :
                              :
     Defendant.           :

REPORT AND RECOMMENDATION

In this action under 42 U.S.C. § 1383(c), Plaintiff seeks
judicial review of an adverse social security ruling which
denied a claim for Supplemental Security Income (hereinafter
*SSI*). The action was referred for report and recommendation
pursuant to 28 U.S.C. § 636(b)(1)(B). Oral argument was heard
on February 10, 2014. Upon consideration of the administrative
record, the memoranda of the parties, and oral argument, it is
recommended that the decision of the Commissioner be affirmed
that this action be dismissed, and that judgment be entered in
favor of Defendant Carolyn W. Colvin and against Plaintiff Alisha
Delores Franklin.

This Court is not free to reweigh the evidence or

substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was twenty-three years old, had completed a high school education (Tr. 31), and had no relevant work experience (Tr. 18). In claiming benefits, Plaintiff alleges disability due to Erb's Palsy (Doc. 16 Fact Sheet).

The Plaintiff filed an application for SSI on June 24, 2009 (Tr. 251-53). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) (Tr. 85-94). On review, the Appeals Council remanded the action back to the ALJ for a new hearing; the Appeals Council also consolidated this action with a more recent application in which Plaintiff had been awarded SSI benefits (Tr. 118-20). On remand, following a new hearing,

the ALJ found Franklin capable of performing a reduced range of sedentary work (Tr. 10-19). Plaintiff requested review of the hearing decision (Tr. 6) by the Appeals Council, but it was denied (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Franklin alleges that: (1) The ALJ did not properly consider her nonexertional impairments; (2) the ALJ improperly discounted the conclusions of her treating physician; and (3) the ALJ did not pose a proper hypothetical question to the vocational expert (Doc. 16). Defendant has responded to—and denies—these claims (Doc. 17). The relevant evidence of record follows.

Records from Children's Rehabilitation Services on February 8, 1989 reveal that Franklin had been born six weeks earlier, had had a difficult delivery, and suffered weakness and flaccidity of the right upper extremity; Plaintiff had little active motion of the shoulder, biceps or wrist extensors, though she appeared to have active flexion of the fingers (Tr. 420). She did have a normal grasp reflex. She was diagnosed to have Erb's Duchenne Palsy, involving the fifth, sixth, and the seventh root. Franklin's hand was placed in a splint and her parents were instructed in range of motion (hereinafter *ROM*)

3

exercises for her to prevent contractures. Records demonstrate that continued exercise, and wearing the splint for about ten months, increased Franklin's arm and hand mobility (Tr. 406-19). On October 13, 1993, Plaintiff was almost five years old and had some elbow and wrist weakness with some function, but less than normal; she was noted to be left-handed, using the right hand as the assisting extremity (Tr. 403-05). Franklin had no significant contractures in the shoulder, elbow, wrist, or hand and was not having severe pronation, internal rotation, or adduction deformities of her humerus. There was some winging of the scapular indicating route injury at the C5-7; there was right upper extremity muscle weakness with resulting decrease in active ROM, appearing worse proximally to distally. The doctor thought that she had reached maximum recovery; Plaintiff's mother said that she could dress herself independently, though she had trouble with buttoning, snapping, and zipping. Records from Children's Rehabilitation Service through January 9, 2002 mark her progress; Franklin was thirteen at that time (*see* Tr. 387-402).

On August 27, 2009, Plaintiff was seen at USAMC by Dr. Maher Loutfi, Neurologist, for increased right arm pain and weakness, radiating into her fingers (Tr. 436-39). On exam, she

was unable to fully abduct the shoulder and fully supinate her arm; she had some weakness in fully extending the arm.  Her sensory exam was normal and no deficit was noted; there was no atrophy of the thenar or the interossel muscles.  Neurontin[1] was prescribed.  On September 23, 2009, a motor nerve conduction study, sensory nerve conduction study, and a needle EMG exam demonstrated right C5-6 chronic reinnervation, reduced voluntary activity, and small sensory nerve potential of the right lateral antebrachial nerve, consistent with residual right side upper trunk brachial plexopathy; there was no electrophysiological evidence of ongoing active denervation (Tr. 440-41).  On April 8, 2010, Franklin complained of continued pain and medication side effects (Tr. 434, 471-72).  Loutfi noted that she was in no acute distress, but was unable to fully adduct the right arm above the shoulder, unable to fully supine the arm, and had some weakness fully extending the arm; the sensory exam was normal and the rest of the neurological exam was within normal limits.  The Neurontin was discontinued and Lyrica[2] was prescribed on an increasing dosage scale.

On April 8, 2010, Neurologist Loutfi completed a physical

[1]**Error! Main Document Only.**_Neurontin_ is used in the treatment of partial seizures.  _Physician's Desk Reference_ 2110-13 (52nd ed. 1998).
[2]_Lyrica_ is used for the management of neuropathic pain.  **Error! Main Document Only.**_Physician's Desk Reference_ 2517 (62nd ed. 2008).

capacities evaluation in which he indicated that Plaintiff was capable of sitting, standing, and walking, each, eight hours at a time and during an eight-hour day (Tr. 430). The doctor further indicated that Franklin was capable of lifting and carrying up to ten pounds on an occasional basis; she could use both hands for simple grasping and fine manipulation, but could not use the right arm for pushing and pulling of arm controls. She could bend, squat, crawl, climb, or reach on a frequent basis. Dr. Loutfi also completed a pain assessment in which he indicated that Franklin's pain would distract her from adequately performing her daily activities and that physical activity would increase her pain enough to distract her from her task, even to the point of totally abandoning it (Tr. 431-32). The doctor further indicated that her medications would cause some side effects, but not enough to cause serious problems.

On January 12, 2011, records from the USAMC Department of Neurology show that Plaintiff was complaining of burning pain and a tremor in her right arm (Tr. 456-57, 469-70). Franklin rated the pain as 7-8 on a ten-point scale; she stated that she took Tylenol, which took the edge off the pain, three-four times a week. On exam, she had decreased right shoulder abduction, decreased pronation of the right forearm, positive atrophy of

the right forearm, and increased tone in the right upper extremity with decreased ROM of the right upper extremity; deep tendon reflexes were absent in that extremity. Plaintiff's Lyrica dosage was increased. On April 6, 2011, Franklin complained of persistent pain, especially after activity and work; she did report improvement with her medication, though it did not completely eliminate the pain (Tr. 459-60, 468). On September 29, 2011, Plaintiff reported no change in her symptomatology (Tr. 466-67). She described her pain as sharp and shooting from the finger to the elbow, lasting two hours at a time, occurring two-to-four times per week, exacerbated by exertion and alleviated by Tylenol and rest. Franklin revealed that she had difficulty raising her right arm above 45°; she could use it for activity at waist level or lower. On examination, the doctor noted right deltoid atrophy, decreased ROM with right arm flexion, right arm shoulder abduction, and that the right arm was externally rotated; there was decreased sensation on the right lateral upper extremity.

At the most recent evidentiary hearing, Franklin testified that she had a nerve disorder in her right arm called Erb's Palsy, restricting her from doing simple things and causing her to do everything with her left arm (Tr. 33; *see generally* Tr.

33-54).  Franklin's right shoulder was not positioned where it
was supposed to be, causing pain for which she used muscle
cream.  She described the pain as shooting and burning all the
way into her fingers, rating it as eight on a ten-point scale,
each occurrence lasting for about half-a-day, every other day;
when inactive, the pain was rated as five or six.  Reaching and
other activities exacerbated the pain, causing her to take
frequent breaks.  Plaintiff could not turn her right arm so that
her palm was up or so that the hand was out toward her side; she
could not extend it forward but to 45°.  The right arm was
smaller than the left arm and partially atrophied.  Repeated use
of her arm caused upper back pain.  Franklin saw the doctor at
USA Neurology every three-to-six months; she took Nortriptyline[3]
but her medications made her light-headed.  The medications
relieved about thirty percent of the pain for two-to-four hours.
Plaintiff's doctor has restricted her to lifting only ten
pounds; she had to hold onto a set of rails when climbing
stairs.  When holding something with her right hand, it suffered
light-to-moderate trembling; she had dulled sensation in the
fingertips.  She could pick up small items with her right hand.
Franklin could bathe and dress herself and tend to her personal

_____

[3]*Nortriptyline* is a tricyclic antidepressant used for treating
depression and for the treatment of chronic pain, including

8

needs, though she needed help with buttons or a zipper in the back of her clothing.  She had a driver's license and could drive.  Plaintiff could sweep, shop, and perform light housework; she tended to her three-year-old child.  Franklin went to church and to the store.

This concludes the Court's review of the evidence.

In bringing this action, Plaintiff first claims that the ALJ did not properly consider her nonexertional impairments, including pain (Doc. 16, pp. 2-11).  The standard by which the Plaintiff's complaints of pain are to be evaluated requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).  The Eleventh Circuit Court of Appeals has also held that the determination of whether objective medical impairments could reasonably be expected to produce the pain was a factual question to be made by the Secretary and, therefore, "subject

---

neuropathy.  http://www.medicinenet.com/nortriptyline/article.htm

only to limited review in the courts to ensure that the finding is supported by substantial evidence." *Hand v. Heckler*, 761 F.2d 1545, 1549 (11th Cir.), *vacated for rehearing en banc*, 774 F.2d 428 (1985), *reinstated sub nom. Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). Furthermore, the Social Security regulations specifically state the following:

> statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

20 C.F.R. 416.929(a) (2013).

In the determination, the ALJ found that Franklin was able to perform less than a full range of sedentary work. More specifically, she found that

> The claimant can occasionally lift and carry up to 10 pounds; sit, stand, and walk 8 hours, out of an 8-hour workday; use the right and left hand for repetitive actions such as simple and fine manipulations; use the left hand on a frequent basis for

> pushing and pulling motions, but not the
> right hand; use both feet on continuous
> basis for pushing and pulling; frequently
> bend, squat, crawl, climb and reach; and
> only occasionally drive automotive
> equipment.

(Tr. 13).[4]  After summarizing the medical evidence, the ALJ went

on to find that although Franklin had impairments that would be

expected to cause some pain and limitation, they were not as

severe as Plaintiff had indicated (Tr. 15, 17).  In reaching

this decision, the ALJ noted that Plaintiff did not take pain

medications for the first three and one-half years after her

asserted disability onset date.  The ALJ also pointed out that

Franklin had testified that Tylenol and her medications helped

with the pain; it was noted that the prescribed medicines that

she took were not strong, narcotic medications.  Plaintiff had

not undergone special treatment for her pain.  Finally, the ALJ

noted that Franklin's self-reported daily activities did not

support her claim of debilitating pain.

The Court finds no error in any of these conclusions,

finding substantial support in the record for them.  Plaintiff's

treatment history does not indicate the level of impairment

---

[4]The Court notes that these abilities/limitations were lifted
directly from the physical capacity evaluation completed by
Neurologist Loutfi, Plaintiff's treating physician (*cf*. Tr. 430).

alleged.  As such, the Court finds that Franklin's pain would not keep her from working.  Her claim otherwise is without merit.

Franklin also claims that the ALJ improperly discounted the conclusions of her treating physician, Neurologist Loutfi (Doc. 16, pp. 11-15).  It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[5] *see also* 20 C.F.R. § 416.927 (2013).

In her determination, the ALJ summarized the medical evidence of record and adopted the limitations set out by Dr. Loutfi in his physical capacities evaluation (Tr. 16; *cf.* Tr. 430).  She went on, though, to discredit his opinions in the Clinical Assessment of Pain, finding them inconsistent with his treatment records and Franklin's testimony (Tr. 17; *cf.* Tr. 431-32).  The ALJ specifically noted that although Loutfi found that Plaintiff's pain would distract her from daily activities and that physical activity would exacerbate her pain, she did not

---

[5]The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1,

take any pain medicine for a long period during her asserted
disability period and more recently relied on over-the-counter
medications along with her prescribed drugs to lessen her pain.
The ALJ also noted other reasons, as previously set out, that
Franklin's pain did not limit her ability to work.

The Court finds the ALJ's conclusions regarding Dr. Loutfi
to be supported by substantial evidence and consistent with her
conclusions regarding Franklin's pain.  The Court would further
note that the limitations suggested by Loutfi are inconsistent
with the doctor's assessment of Franklin's physical abilities.
The Court finds that Plaintiff's claim that the ALJ did not
properly consider her complaints of pain is without merit.

The final claim raised in this action is that the ALJ did
not pose a proper hypothetical question to the vocational expert
(hereinafter *VE*) (Doc. 16, pp. 8-11).  The Eleventh Circuit
Court of Appeals has held that an ALJ's failure to include
severe impairments suffered by a claimant in a hypothetical
question to a VE to be reversible error where the ALJ relied on
that expert's testimony in reaching a disability decision.
*Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985).

Plaintiff first claims that the ALJ's hypothetical was

---

1981.

deficient because it did not include pain as a factor to be considered. The Court notes that the hypothetical was based on the abilities that Franklin's treating physician said that she was capable of performing. The ALJ rejected the doctor's conclusions regarding Plaintiff's pain—a finding supported by substantial evidence as found by this Court—so it was not necessary to include it in the hypothetical.

Franklin also points out that some of the responses by the VE, following questions by her attorney, indicate that she could not do all of the jobs that the ALJ found she could do. While it is true that Franklin would appear unable to perform the jobs of lens installer and call-out operator as they require bilateral manual dexterity, the job of surveillance system monitor remains. The ALJ's error in this regard is, at most, harmless.

Plaintiff has raised three different claims in bringing this action. All are without merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. Therefore, it is recommended that the Secretary's decision be affirmed, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), that

14

this action be dismissed, and that judgment be entered in favor of Defendant Carolyn W. Colvin and against Plaintiff Alisha Delores Franklin.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(B); S.D. ALA. L.R.72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this 12th day of February, 2014.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE